UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                            :
AEP-PRI INC.,                                    :
                           Plaintiff,         :
                                     :        12 Civ. 8981 (PAE)
                -v-                      :
                                     :        <u>OPINION & ORDER</u>
GALTRONICS CORPORATION LTD. and      :
GALTRONICS ELECTRONICS (WUXI) CO. LTD.,  :
                                     :
                       Defendants.      :
                                     :
------------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

       Plaintiff AEP-PRI Inc. ("AEP") brings claims of breach of contract, fraud, and *quantum meruit*, all under New York state law and all arising under a Memorandum of Understanding ("MOU").  Plaintiff's sole basis for alleging personal jurisdiction is a forum-selection clause in the MOU.  AEP seeks compensatory, punitive, and statutory damages, equitable remedies, and attorneys' fees.

       Defendants Galtronics Corporation Ltd. ("Galtronics") and Galtronics Electronics (Wuxi) Co. Ltd. "(Wuxi," and together with Galtronics, "defendants") now move to dismiss for lack of personal jurisdiction, lack of standing, and, as to the fraud claim, failure to state a claim.  AEP also moves to exclude certain documents submitted by defendants from consideration.

       For the reasons stated below, the Court grants defendants' motion to dismiss, without prejudice to AEP's right to amend its Amended Complaint to attempt to correct the deficiencies identified below.  The Court denies AEP's motion to exclude.

## I.     Background[1]

### A.     Parties

AEP is a Delaware corporation with its principal place of business in Connecticut.  Am. Compl. ¶ 1(a).  Two AEP subsidiaries are relevant to this case:  AEP-PRI Mauritius Ltd. ("AEP Mauritius") was a limited liability company organized under Mauritian law, with its principal place of business in Connecticut.  *Id.* ¶ 3.  Although now dissolved, AEP Mauritius was a wholly-owned subsidiary of AEP, and was AEP's only asset.  *Id.*; 2d Burke Aff. ¶ 3.  AEP Asia (Suzhou) Co. Ltd. ("AEP Asia") was, in turn, a wholly-owned subsidiary, and the sole asset, of AEP Mauritius.  2d Burke Aff. ¶ 4.  AEP Asia operated a metal plating plant in Suzhou Industrial Park, Suzhou, China.  Am. Compl. ¶ 6.

Galtronics is a company organized and existing under the laws of Israel.  *Id.* ¶ 4(a).  It specializes in the design and development of radio frequency solutions, and has developed a proprietary metal plating process.  MOU 1.  Wuxi, its subsidiary, is a corporation organized and existing under the laws of China.  *Id.* ¶ 4(b).

### B.     Facts

Beginning in or around February 2010, AEP and its subsidiaries were involved in negotiations with defendants for the sale of the corporate shares of AEP Asia by AEP Mauritius to Galtronics or Wuxi.  *See* 1st Burke Aff. ¶ 7.  In contemplation of this sale, representatives of AEP and Galtronics negotiated the MOU, which laid out certain preliminary steps for defendants

---

[1] The Court's account of the underlying facts in this case is drawn from the Amended Complaint ("Am. Compl.") (Dkt. 18) and the Memorandum of Understanding (the "MOU") attached thereto.  The Court's account also derives from affidavits submitted by AEP, including the First Affidavit of Dennis M. Burke ("1st Burke Aff.") (Dkt. 35); the Affidavit of John McGuire ("McGuire Aff.") (Dkt. 36); the Affidavit of Michael Stanga ("Stanga Aff.") (Dkt. 37); and the Second Affidavit of Dennis M. Burke ("2d Burke Aff.") (Dkt. 38).  As discussed further in Part III, *infra*, the Court also considers the declarations of Ephraim Ulmer ("Ulmer Decl.") (Dkt. 20) and David Zaslowsky ("Zaslowsky Decl.") (Dkt. 21), and the exhibits attached thereto.

to take before signing the attached Purchase Agreement 40 days later.  Am. Compl. ¶¶ 6, 9; *see*

*generally* MOU.  On or about June 17, 2010, AEP and AEP Mauritius signed a version of the

MOU, which had been drafted by Galtronics, and returned it to Galtronics by email and hard

copy.  Am. Compl. ¶ 5.  On or about June 21, 2010, Galtronics sent AEP a new MOU with

minor revisions (which version is attached to the Amended Complaint), and asked AEP to sign

the clean copy, which had not been signed by either defendant.  *Id.*  Dennis Burke signed the

MOU "on behalf of Plaintiff, [AEP] Mauritius, and Plaintiff's two corporate shareholders

(American Electro Products, Inc. and Pacific Resources International, LLC)."  *Id.* ¶ 7.  The MOU

was never signed by Galtronics or Wuxi.  *See* Pl. Br. 11.

Thereafter, AEP alleges that Galtronics directly, or through Wuxi, took control of AEP

Asia as contemplated by the MOU.  Defendants allegedly did so by, *inter alia*, taking possession

of and operating the AEP Asia plant in Suzhou; making cash contributions to AEP Asia; taking

existing and new contracts of AEP Asia for their own profit and benefit; and taking control of all

bank accounts and internal management systems.  *See* Am. Compl. ¶¶ 1(f)(i)–(vi); 8(i)–(vi).  At

the end of 40 days, however, Galtronics failed to sign the Purchase Agreement and to buy the

corporate shares of AEP Asia.  *Id.* ¶ 10.  Galtronics and Wuxi then refused to terminate the MOU

and failed to vacate the Suzhou plant.  *Id.* ¶ 11.  Defendants never paid the purchase price of

AEP Asia, but occupied the Suzhou plant from July 2010 through the end of February 2011.  *Id.*

¶¶ 12, 15.  On February 28, 2011, defendants abruptly vacated the plant.

### C.    Procedural History

On December 11, 2012, AEP filed its Complaint in this matter.  Dkt. 1.  It alleges claims

for breach of contract, fraud, and *quantum meruit* in connection with defendants' failure to

complete the MOU by signing the Purchase Agreement within 40 days and their prolonged occupation of the AEP Asia Suzhou plant.

On December 19, 2012, the Court appointed an international process server. Dkt. 4. After several extensions of time to serve Wuxi, service on both defendants was achieved. *See* Dkt. 5, 42. On May 1, 2013, defendants filed a motion to dismiss. Dkt. 10–13. On May 6, 2013, this Court issued an order stating that AEP was required to file an amended complaint, if any, by May 22, 2013. Dkt. 14. On May 21, 2013, AEP filed its Amended Complaint. Dkt. 18.

On May 31, 2013, defendants filed the instant motion to dismiss, seeking dismissal for lack of personal jurisdiction, lack of standing, and, as to the fraud claim, failure to state a claim. Dkt. 19–22. As to personal jurisdiction, the fundamental dispute is whether the forum selection clause in the MOU is effective. Defendants contend that (1) neither defendant ever signed the MOU; and (2) defendants did not, and as a matter of law could not, accept the MOU through performance. AEP concedes that defendants never signed the MOU, *see* Am. Compl. ¶¶ 1(e), 8; Pl. Br. 11, but alleges that defendants "accepted the MOU by commencing performance of the terms of the MOU." Am. Compl. ¶ 1(f). As to standing, defendants argue that AEP has no standing, because its subsidiary, and not AEP itself, was a party to the MOU. In response, AEP contends that (1) it was a party to the MOU; and (2) in any event, AEP Mauritius was dissolved and its claims assigned to AEP.

On June 20, 2013, AEP filed its opposition to defendants' motion. Dkt. 39 ("Pl. Br."). Simultaneously, AEP filed a motion to exclude, seeking to exclude the declarations submitted with defendants' motion. Dkt. 31–32.

On June 24, 2013, the Court held an initial pretrial conference. In addition to staying discovery during the pendency of this motion, *see also* Dkt. 17, the Court resolved a

disagreement between the parties as to briefing of the motion to exclude.  Specifically, plaintiff agreed to forego a reply on the motion, and defendants agreed not to submit a separate opposition, but instead to incorporate their opposition into their merits reply brief.  On June 26, 2013, defendants filed their reply.  Dkt. 41.

## II.    Motion to Exclude

In its motion to exclude, AEP seeks to exclude the Ulmer Declaration, the Zaslowsky Declaration, the defendants' statement of facts in their brief, and "[a]ll citations . . . to any alleged fact other than citations to the Amended Complaint itself."  MTE Br. 1.  These two declarations form the basis for defendants' statement of facts in their motion to dismiss, which contradicts AEP's allegations in material ways.  Its basis for the motion is that defendants' motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) is in fact a motion to dismiss under Rule 12(b)(6).  In effect, defendants note, the jurisdictional issue collapses with the merits.

In considering a motion to dismiss under Rule 12(b)(2), the Court may consider extrinsic evidence such as affidavits and other supporting materials.  However, on a Rule 12(b)(6) motion, the Court must assume all facts pled in the complaint to be true, and may only consider documents incorporated into the complaint by reference (here, the MOU).  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

The Court denies AEP's motion to exclude.  In both form and substance, defendants' motion is made under Rule 12(b)(2).  Defendants ask the Court to address the enforceability of the MOU because the MOU is the sole proffered basis for personal jurisdiction.  That AEP's theory of personal jurisdiction, premised on defendants' acceptance of the MOU by performance,

5

overlaps with the merits of AEP's contract claim does not make consideration of such extrinsic evidence improper at this stage, so long as it is considered solely for the purpose of resolving defendant's motion under Rule 12(b)(2).

Importantly, the burden is always on the *plaintiff* to make a *prima facie* showing that personal jurisdiction exists over both defendants. *See Penachio v. Benedict*, 461 F. App'x 4, 5 (2d Cir. 2012) (citing *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)). Here, AEP has pled personal jurisdiction solely on the basis of the forum selection clause in the MOU. Therefore, the burden is on AEP to make a *prima facie* case that the MOU—and the forum selection clause within it—is enforceable. Where, as here, AEP cannot do so on the basis of the unsigned MOU, the Court may consider competing affidavits to determine whether AEP's argument of acceptance by performance is borne out, so long as the Court "construe[s] all pleadings and affidavits in the light most favorable to the plaintiff." *Karpov v. Karpov*, No. 12 Civ. 3649 (PAE), 2012 WL 5233565, at *2 (S.D.N.Y. Oct. 23, 2012) (citing *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)); *see also Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 196–97 (2d Cir. 1990) (the Court may rely on "information in the complaint as well as supporting documentation" to determine whether plaintiff has made a *prima facie* showing of jurisdiction); *Jesselson v. Lasertechnics Inc.*, No. 96 Civ. 1452 (KMW), 1997 WL 317355, at *1 (S.D.N.Y. June 12, 1997) ("[A] district court making a determination based upon affidavits must resolve doubts in favor of the plaintiff, 'notwithstanding a controverting presentation by the moving party.'" (quoting *A.I. Trade Fin. Inc. v. Petra Bank*, 989 F.2d 76, 80 (2d Cir.1993))).

The Court therefore denies AEP's motion to exclude. In assessing jurisdiction, the Court is permitted to consider the affidavits submitted by defendants, as well as those submitted by

6

AEP.  In any event, for the reasons stated below, the affidavits have not proven necessary to the Court's determination that dismissal is merited on other grounds (AEP's lack of standing).

## III.    Personal Jurisdiction

Because the forum selection clause in the MOU is the sole alleged basis for personal jurisdiction over defendants, the motion to dismiss on this basis turns on whether the forum selection clause in the MOU is effective.  AEP concedes that defendants never signed the MOU, *see* Am. Compl. ¶¶ 1(e), 8; Pl. Br. 11, but alleges that defendants "accepted the MOU by commencing performance of the terms of the MOU."  Am. Compl. ¶ 1(f).  To decide whether AEP has made out a *prima facie* case of personal jurisdiction, the Court therefore must determine first, whether, as a matter of law, AEP's theory of acceptance of the MOU by defendants through performance is viable, and, second, if so, whether defendants in fact did so, as AEP alleges.

### A.    Legal Standard

"[T]he plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "[T]he showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it 'varies depending on the procedural posture of the litigation.'"  *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, No. 12-770-cv, 2013 WL 3335784, at *3 (2d Cir. July 3, 2013) (per curiam) (quoting *Ball*, 902 F.2d at 197).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction.  At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations."  *Id.* (quoting *Ball*, 902 F.3d at 197); *accord In re Terrorist Attacks*, 714 F.3d at 673 ("In order to survive a motion to dismiss for lack of personal

jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." (citation omitted)).

"This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)).  The court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Dorchester*, 2013 WL 3335784, at *3 (quoting *S. New Eng. Tel.*, 624 F.3d at 138); *accord A.I. Trade Fin.*, 989 F.2d at 79–80 ("[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party." (citation omitted)).  Nevertheless, the court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *accord Licci ex rel. Licci v. Lebanese Canadian Bank*, 673 F.3d 50, 59 (2d Cir. 2012).

In determining whether there is personal jurisdiction, the Court applies a two-part test.  First, the Court must decide whether personal jurisdiction over AEP's claims is supplied by the forum selection clause.  If so, the analysis ends there.  *See D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006) ("Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements."); *Exp.–Imp. Bank of the U.S. v. Hi–Films S.A. de C. V.*, No. 09 Civ. 3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010) ("Where an agreement contains a valid and enforceable forum selection clause, however, it is not necessary

8

to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process.").

Second, to the extent that the forum selection clause does not supply personal jurisdiction over a particular claim or claims, the Court may inquire whether there is personal jurisdiction over defendants under principles of New York law.  In a diversity action, a federal court in New York may exercise personal jurisdiction over a non-resident defendant based either on general jurisdiction, under C.P.L.R. § 301, or specific jurisdiction, under C.P.L.R. § 302.  *Realuyo v. Abrille*, 93 F. App'x 297, 298–99 (2d Cir. 2004); *Delagi v. Volkswagenwerk A.G*, 29 N.Y.2d 426, 430 (1972).  Here, there is no credible claim that the Court has personal jurisdiction—either specific or general—over defendants under principles of New York law.  The Complaint is, in fact, devoid of any allegation that defendants took any action in New York.  AEP does not, for example, allege that the MOU was signed in New York or that any relevant actions taken pursuant to it occurred in New York.  Accordingly, the MOU's forum selection clause is the sole potential basis for personal jurisdiction.

## B.    Discussion

It is undisputed that the MOU was not signed by either Galtronics or Wuxi.  *See* Pl. Br. 11 ("Plaintiff concedes that neither Defendant signed the MOU.").  AEP argues instead that defendants accepted the MOU by performance.  Namely, it contends that Galtronics directly, or through Wuxi, took control of AEP Asia by, *inter alia*, taking possession of and operating the AEP Asia plant in Suzhou; making cash contributions to AEP Asia; taking existing and new contracts of AEP Asia for their own profit and benefit; and taking control of all bank accounts and internal management systems.  *See* Am. Compl. ¶¶ 1(f)(i)–(vi); 8(i)–(vi).

Through their briefs and declarations, defendants contradict each of these allegations. Indeed, defendants aver that nearly all of these allegations of performance are patently false.  *See* Def. Br. 10–13.  These assertions, if true, raise very substantial questions about AEP's allegations of performance.  However, the Court's role at this stage is not to weigh defendants' declarations against AEP's complaint; the Court may not now resolve this factual dispute.  *See* *Dorchester*, 2013 WL 3335784, at *4.  Construing the pleadings and affidavits in the light most favorable to AEP, and resolving all doubts in AEP's favor, the Court must assess whether AEP has made a *prima facie* showing of personal jurisdiction "*notwithstanding any controverting presentation by [defendants]*."  *Id.* at *4 (emphasis added).

Taking all facts as alleged by AEP, the question, then, is whether defendants could, as a matter of law, accept the MOU by performance.  In its brief so articulating this theory, AEP, quite unhelpfully, fails to cite even a single case.  On the basis of its independent review of the law, however, the Court concludes that plaintiffs' theory of acceptance by performance of the MOU that they did not sign is legally viable.

As a general rule, "[u]nder New York law, if parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs.  This rule holds even if the parties have orally agreed upon all the terms of the proposed contract." *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) (citations omitted). However, under certain circumstances, a party may evince an acceptance of a contract even if it is not yet signed and in writing:

> The Second Circuit has set forth a four-factor test for determining whether parties intended to be bound by a written agreement only (rather than an oral one): (1) the party's "explicit statement that it reserves the right to be bound only when a written agreement is signed"; (2) "whether one party has partially performed, and that performance has been accepted by the party disclaiming the contract"; (3) "whether there was literally nothing left to negotiate or settle, so that all that

10

remained to be done was to sign what had already been fully agreed to"; and (4) "whether the agreement concerns those complex and substantial business matters where requirements that contracts be in writing are the norm rather than the exception."

*CAC Grp., Inc. v. Maxim Grp., LLC*, No. 12 Civ. 5901 (KBF), 2012 WL 4857518, at *3 (S.D.N.Y. Oct. 10, 2012) (quoting *R.G. Grp.*, 751 F.2d at 75–76), *aff'd*, No. 12-4381-CV, 2013 WL 1831672 (2d Cir. May 2, 2013).  Here, AEP has alleged that it signed the revised MOU, and that defendants "either accepted the MOU by performance . . . or upon communication of acceptance of the MOU contract by [AEP] Mauritius and Plaintiff."  Am. Compl. ¶ 18.

The Court concludes that, although there are certainly factors suggesting that defendants did not intend to be bound, AEP has made sufficient allegations at this early, motion to dismiss stage to make out a *prima facie* case that defendants, although they did not sign the MOU, consented to its terms.  Most persuasively, AEP has alleged numerous, specific ways in which defendants partially performed the contract.  *See* Am. Compl. ¶¶ 1(f)(i)–(vi); 8(i)–(vi).  The Amended Complaint also alleges that AEP, for its part, accepted the MOU both by signing it and partially performing, in that AEP intended to proceed with the Purchase Agreement as contemplated by the MOU.  *Id.* ¶¶ 7, 9–12.  At this stage, the Court may not credit defendants' declarations to the contrary.  Such "partial performance is an unmistakable signal that one party believes there is a contract; and the party who accepts performance signals, by that act, that it also understands a contract to be in effect."  *R.G. Grp.*, 751 F.2d at 75–76.  The second factor, then, points strongly in AEP's favor.  *See Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428, 443 (S.D.N.Y. 2003).

In addition, the MOU had been heavily negotiated, drafted by Galtronics, and appears to have been in final form.  And AEP alleges that it had been signed "on behalf of Plaintiff, [AEP] Mauritius, and Plaintiff's two corporate shareholders (American Electro Products, Inc. and

Pacific Resources International, LLC)."  Am. Compl. ¶ 7.  The third factor, then, also points in plaintiff's favor, at this early stage.  See *R.G. Grp.*, 751 F.2d at 76.

To be sure, there is also much evidence to the contrary:  Relevant to the first factor, the MOU itself contains various provisions that suggest that a formal, executed agreement was required.  *See, e.g.*, MOU recitals & §§ 7.3 ("No representation or warranty or other statements made orally or in writing during the course of negotiation which are not expressly embodied herein shall be of any force and effect."), 7.4 ("Any change or amendment to this MOU shall not be valid unless made in writing and signed by all parties to this MOU.").  And "when a party gives forthright, reasonable signals that it means to be bound only by a written agreement, courts should not frustrate that intent."  *R.G. Grp.*, 751 F.2d at 75; *see also Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 262 (2d Cir. 1984); *Nat'l Gear & Piston, Inc. v. Cummins Power Sys., LLC*, 861 F. Supp. 2d 344, 357–58 (S.D.N.Y. 2012); *Kargo, Inc. v. Pegaso PCS, S.A. de C.V.*, No. 05 Civ. 10528 (CSH)(DFE), 2008 WL 4579758 (S.D.N.Y. Oct. 14, 2008).  The fourth factor, too, favors defendants, because the MOU is the sort of agreement that must normally be in writing, concerning as it does complex and substantial business matters (here, a contemplated acquisition of AEP Asia).

For these reasons, the Court is skeptical that, should this case move forward, AEP would ultimately succeed on its argument that defendants intended to accept and in fact accepted the MOU through performance.  But "[w]hile the Court can make the determination of whether the parties intended to be bound in an alleged preliminary agreement on a motion to dismiss, courts are often reluctant to rule on the issue of intent to form a binding agreement in a judgment on the pleadings, and must be cautious in making such determinations."  *Spencer Trask*, 383 F. Supp. 2d at 439 (citing *Advanced Marine Techs.*, 16 F. Supp. 2d at 381 n.27).  Accordingly, at this

early stage of the case and crediting all of AEP's allegations as true, the Court concludes that AEP has made a *prima facie* showing of personal jurisdiction.

Although the Court might otherwise consider targeted, jurisdictional discovery to resolve this issue, as AEP points out in its motion to exclude, the dispute as to personal jurisdiction here collapses with the merits issue of whether the MOU is enforceable at all.  And the Second Circuit has warned courts to be cautious in dismissing a complaint for lack of personal jurisdiction in the "unusual situation in which the jurisdictional dispute is interwoven with the underlying merits." *Dorchester*, 2013 WL 3335784, at *5.  That is the case here, because whether the MOU's forum selection clause is enforceable implicates the question whether the MOU itself is an enforceable contract.  In such cases, the Second Circuit has advised that it is more appropriate to leave the jurisdictional issue for summary judgment or for trial.  *Id.*; *see also Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006) ("If . . . the overlap in the evidence is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial."); 5C C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 1350 (3d ed. 2010) ("If . . . a decision of the jurisdictional issue requires a ruling on the underlying substantive merits of the case, the decision should await a determination of the merits either by the district court on a summary judgment motion or by the fact finder at the trial.").

Accordingly, the Court concludes that AEP has made out a *prima facie* case of personal jurisdiction.

13

**IV.     Standing**

That, however, is not the end of the matter.  Defendants make a separate argument for dismissal:  that even if the MOU were enforceable, AEP, the plaintiff here, has no standing to enforce it, and in the alternative, has improperly manufactured diversity jurisdiction.

As an initial matter, the parties dispute whether AEP is a party to the MOU.  The MOU, however, makes quite clear that AEP is not a party.  On its first page, the MOU expressly lists the parties as Galtronics, Wuxi, AEP Asia, and AEP Mauritius.  Although the MOU required shareholder approval from AEP-PRI, Inc. (the plaintiff here) and its parent company American Electro Products, Inc., the MOU clearly states that the two shareholders "acknowledge the terms of and conditions of the attached [MOU] between Galtronics, GT Wuxi, AEP-Asia and AEP-Mauritius . . . and undertake to cooperate with the Parties thereto and do all that may be necessary to assist the Parties in fulfilling the terms of the MOU."  MOU at 7.  Thus, the only page on which AEP was to sign squarely acknowledged that AEP was not itself a party to the MOU.  (Although AEP was to be a party to the Purchase Agreement, that contract was never signed, and there is no contention that it was accepted by performance or otherwise.)  Thus, the language of the MOU itself makes clear that AEP is not itself a party, but rather a parent company/shareholder whose consent was required.

Under New York law, the fact of corporate affiliation does not give an entity the right to bring a suit in its own name to remedy an injury to an affiliate.  New York law bars parent corporations from bringing direct suits aimed at vindicating injuries suffered by their subsidiaries.  *See NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, No. 10 Civ. 5762 (PAE), 2013 WL 489020, at *7 (S.D.N.Y. Feb. 8, 2013) (collecting cases).  The Second Circuit has noted that a corporate subsidiary is a "separate corporation," and the parent company thus does

14

not have any inherent "standing to assert [the subsidiary's] legal rights." *Hudson Optical Corp. v. Cabot Safety Corp.*, No. 97-9046, 1998 WL 642471, at *3 (2d Cir. Mar. 25, 1998) (summary order).  Thus, AEP may not directly assert claims that belong to its subsidiary AEP Mauritius.[2]

AEP next contends that AEP Mauritius's claims under the MOU were *assigned* to it after AEP Mauritius was dissolved in November 2012.[3]  But that theory encounters a separate barrier. Congress has mandated that courts do not have jurisdiction where claims are assigned for the purpose of concocting federal jurisdiction.  Under 28 U.S.C. § 1359, "[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court."  The Second Circuit has instructed that courts are to "give careful scrutiny to assignments which might operate to manufacture diversity jurisdiction."  *Airlines Reporting Corp. v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995); *see also LCE Lux HoldCo S.a.r.l. v. Entretenimiento GM de Mexico S.A. de C.V.*, 287 F.R.D. 230, 239 (S.D.N.Y. 2012).  Courts "construe Section 1359

---

[2] The Court notes that AEP has not alleged that it is suing derivatively on behalf of AEP Mauritius.  In any event, AEP has not attempted to meet the pleading requirements of a derivative lawsuit under Federal Rule of Civil Procedure 23.1(b).

[3] It is clear that AEP Mauritius may not itself sue in federal court, because it is a citizen both of Mauritius and Connecticut, and thus there would be no diversity jurisdiction if AEP-Mauritius were to sue foreign defendants.  *See Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012) ("We have diversity jurisdiction over cases between citizens of the United States and citizens of foreign states, but we do not have diversity jurisdiction over cases between aliens.  More specifically, 'diversity is lacking . . . where the only parties are foreign entities, or where on one side there are citizens and aliens and on the opposite side there are only aliens.'" (quoting *Universal Licensing Corp. v. Paola del Lungo S.p.A.*, 293 F.3d 579, 581 (2d Cir. 2002)); *Universal Licensing*, 293 F.3d at 581 (collecting cases); *Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000) ("[E]ven if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity i[s] nonetheless defeated if another alien party is present on the other side of the litigation." (quoting *International Shipping*, 875 F.2d at 391)).

broadly to bar any agreement whose primary aim is to concoct federal diversity jurisdiction." *Airlines Reporting*, 58 F.3d at 862 (citation omitted).

To effect this careful scrutiny, the Second Circuit has articulated a presumption, under which "assignments between parent companies and their subsidiaries must be treated as presumptively ineffective." *Airlines Reporting Corp*, 58 F.3d at 862–63 (quoting *Prudential Oil*, 546 F.2d at 476). "To rebut this presumption, the party invoking jurisdiction must articulate a legitimate business purpose for the assignment, and bears a heavy burden of proof." *LCE Lux HoldCo*, 287 F.R.D. at 239 (citations omitted). In assessing whether a party has rebutted the presumption, "[c]ourts consider, *inter alia*: the assignee's lack of a previous connection with the claim assigned; the remittance by the assignee to the assignor of any recovery; whether the assignor actually controls the conduct of the litigation; the timing of the assignment; the lack of any meaningful consideration for the assignment; and the underlying purpose of the assignment." *Airlines Reporting*, 58 F.3d at 863 (citations omitted).

Here, AEP has failed to articulate any legitimate business reason at all for the dissolution of AEP Mauritius and the concomitant transfer of the claims under the MOU to AEP. Even after defendants raised this shortcoming in their first motion to dismiss, *see* Dkt 13, at 10–12, AEP failed properly to amend its complaint to include facts substantiating such a business reason. Nor, notably, did AEP include an affidavit in its opposition to defendants' motion that addressed this point. This failure on AEP's part is fatal to its attempt to rebut the presumption that AEP Mauritius's assignment was ineffective.

Other factors, too, strongly suggest a collusive transfer for the purpose of manufacturing diversity jurisdiction. In particular, the Court notes that plaintiff's subsidiary, AEP Mauritius, previously filed suit in this District, making these same claims. *See* No. 12 Civ. 6436 (LAK). In

that case, Judge Kaplan *sua sponte* dismissed the case for failure to allege diversity jurisdiction. *See id.* Dkt. 3, 7 ("[T]he amended complaint makes clear that all of the parties on both sides are corporations organized under foreign law, which is fatal to the existence of federal jurisdiction under 28 U.S.C. § 1332.").  Judge Kaplan again denied a motion to amend the complaint on November 16, 2012.  According to AEP's submissions in this case, AEP Mauritius was allegedly dissolved—and its claims assigned to AEP—on November 16, 2012.  *See* 2d Burke Aff. ¶ 3. This coincidence in timing compellingly suggests that the assignment was made to manufacture diversity jurisdiction, and not for a legitimate business reason.

Accordingly, on this record, the Court must conclude that the transfer of the claims under the MOU to AEP were collusive, and thus ineffective under 28 U.S.C. § 1359.  AEP, therefore, has suffered no injury and has no standing to assert AEP Mauritius's claims based on the MOU.

The Court, however, will allow AEP to amend its Amended Complaint for the limited purpose of curing its pleadings to assert a legitimate business reason for the November 16, 2012 dissolution of AEP Mauritius.  In the event that no legitimate business purpose is proffered or AEP fails to meet its required "heavy burden of proof," *Prudential Oil Corp. v. Phillips Petroleum Co.*, 546 F.2d 469, 476 (2d Cir. 1976), the Court will deny AEP's motion to amend *sua sponte*.

## CONCLUSION

For the reasons stated above, the Court denies defendants' motion to dismiss for lack of personal jurisdiction, but grants defendants' motion to dismiss for lack of standing.  The Court also denies AEP's motion to exclude.  The Clerk of Court is directed to terminate the motions pending at docket numbers 10, 19, and 31.

AEP is directed to submit a motion to amend its pleadings by August 28, 2013, for the limited purpose of curing its pleadings to assert a legitimate business reason for the November 16, 2012 dissolution of AEP Mauritius and assignment of its claims to AEP.  If no motion is received by then, the Court will close the case.


SO ORDERED.

_Paul A. Engelmayer_

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: August 13, 2013
       New York, New York

18